UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HAROLD C. ROBINSON, et al.,

              Plaintiffs,

    v.

OPEN TOP SIGHTSEEING SAN FRANCISCO, LLC,

              Defendant.

Case No. 14-cv-0852-PJH

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

On September 23, 2015, plaintiff's motion for class certification came on for hearing before this court.  Plaintiff Harold C. Robinson, Jr. ("plaintiff") appeared through his counsel, Steven Tidrick.  Defendant Open Top Sightseeing San Francisco, LLC ("defendant" or "Open Top") appeared through its counsel, Michael Purcell.  The court then conducted further evidentiary hearings on September 25, 2015, and October 21, 2015.  Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a wage and hour case originally filed in state court, and removed to this court on February 26, 2014.  Plaintiff was formerly employed by defendant Open Top as a bus operator.  <u>See</u> Second Amended Collective and Class Action Complaint ("SAC"), ¶ 4.  Defendant provides sightseeing tours throughout California.

Plaintiff alleges a number of wage and hour violations on behalf of a class of defendant's bus operators.  Most relevant to this motion, plaintiff alleges that defendant

United States District Court
Northern District of California

1   requires operators to work more than 40 hours in a week, but does not pay them at an

2   overtime rate.  Plaintiff also claims that the overtime violations led to inaccurate wage

3   statements and waiting time penalties.  Plaintiff moves for certification on claims related

4   to these allegations.

5       Plaintiff also alleges that defendant failed to provide meal and rest breaks, and

6   failed to compensate operators for mandatory meetings.  Overall, the complaint asserts

7   ten causes of action:  (1) violation of the Fair Labor Standards Act ("FLSA"), (2) failure to

8   pay straight time under Wage Order 9 and various California Labor Code sections, (3)

9   failure to provide accurate wage statements under Labor Code § 226 and Wage Order 9,

10  (4) waiting time penalties under the Labor Code, (5) failure to pay all wages owed under

11  the Labor Code, (6) failure to provide meal periods under Labor Code § 226.7, (7) failure

12  to provide rest breaks under Labor Code § 226.7, (8) failure to pay minimum wage under

13  San Francisco Administrative Code § 12, (9) violation of California Business &

14  Professions Code § 17200, and (10) violation of PAGA.[1]

15      Plaintiff previously moved for conditional certification of a FLSA opt-in collective

16  action, which the court granted on December 24, 2014.  Plaintiff now moves for

17  certification of the following two classes:

18      (1) a class under Rule 23(a) and (b)(3) with respect to the third cause of action

19  (failure to provide accurate wage statements) and fourth cause of action (waiting time

20  penalties), referred to as the "California class" and defined as follows:  "All individuals

21  who are currently employed, or formerly have been employed, by Open Top Sightseeing

22  San Francisco, LLC as a bus operator at any time on or after November 26, 2010,

23  excluding anyone employed by counsel for plaintiff in this action, and any judge to whom

24  this action is assigned and his or her immediate family members."

25      (2) a class under Rule 23(a) and (b)(3) with respect to the ninth cause of action

26  (section 17200), referred as the "section 17200 class," and defined as follows:  "All

27  _____

28  [1] At the hearing, plaintiff represented that he was voluntarily dismissing the second, fifth, sixth, and eighth causes of action.  Accordingly, those claims are DISMISSED.

1   individuals who are currently employed, or formerly have been employed, by Open Top

2   Sightseeing San Francisco, LLC as a bus operator at any time on or after November 26,

3   2009, excluding anyone employed by counsel for plaintiff in this action, and any judge to

4   whom this action is assigned and his or her immediate family members."

**DISCUSSION**

A.   Legal Standard

7   "Before certifying a class, the trial court must conduct a 'rigorous analysis' to

8   determine whether the party seeking certification has met the prerequisites of Rule 23."

9   Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation

10  and quotation omitted).

11      The party seeking class certification bears the burden of affirmatively

12  demonstrating that the class meets the requirements of Federal Rule of Civil Procedure

13  23.  Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2551 (2011).  In order

14  for a class action to be certified, plaintiffs must prove that they meet the requirements of

15  Federal Rule of Civil Procedure 23(a) and (b).

16      Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality

17  and adequacy of representation in order to maintain a class.  First, the class must be so

18  numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ. P.

19  23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R.

20  Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical

21  of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the class

22  representative(s) must be able to protect fairly and adequately the interests of all

23  members of the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification

24  bear the burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel.

25  Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes, 131 S.Ct. at

26  2551.

27      If all four prerequisites of Rule 23(a) are satisfied, the court then determines

28  whether to certify the class under one of the three subsections of Rule 23(b), pursuant to

United States District Court
Northern District of California

3

1  which the named plaintiffs must establish either (1) that there is a risk of substantial

2  prejudice from separate actions; or (2) that declaratory or injunctive relief benefitting the

3  class as a whole would be appropriate; or (3) that common questions of law or fact

4  common to the class predominate and that a class action is superior to other methods

5  available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

6      The court does not make a preliminary inquiry into the merits of plaintiffs' claims in

7  determining whether to certify a class.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177

8  (1974).  The court will, however, scrutinize plaintiffs' legal causes of action to determine

9  whether they are suitable for resolution on a class-wide basis.  See, e.g., Moore v.

10  Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a

11  determination will sometimes require examining issues that overlap with the merits.  See

12  Dukes, 131 S.Ct. at 2551-52 (acknowledging that court's "rigorous analysis" will

13  frequently entail some overlap with merits of plaintiff's underlying claim).

14  B.    Legal Analysis

15      The court will first address the Rule 23(a) factors, starting with numerosity.

16  Plaintiff contends that there were at least 88 people employed as operators during the

17  class period, and thus argues that the class is sufficiently numerous.  Defendant does not

18  appear to dispute that 88 class members would be enough for certification, but instead

19  argues that plaintiff's figure is "undermined by the fact that Robinson already attempted

20  and failed to have an adequate number of potential members consent to join his

21  proposed FLSA 'opt-in' class."  Dkt. 79 at 11.  Defendant further specifies that "only

22  approximately thirty potential plaintiffs elected to opt in" to the FLSA collective action.

23      However, defendant does not provide any authority for considering the number of

24  FLSA opt-ins when conducting the Rule 23 numerosity analysis.  The numerosity of a

25  potential Rule 23 class is a determination separate from any developments with regard to

26  the FLSA collective action, and thus, given the undisputed representation that there are

27  at least 88 individuals in the proposed class, the court finds that the numerosity

28  requirement is met, as stated at the hearing.

United States District Court
Northern District of California

Next, as to commonality, plaintiff argues that there are a number of common questions, such as (1) "whether defendant's policy and practice of failing to pay overtime to operators violates the FLSA," which in turn, would entitle them to restitution under section 17200; (2) "whether defendant violates California Labor Code § 226 by issuing pay stubs that do not include all applicable pay rates and the correct wages earned (in light of the failure to pay overtime); and (3) "whether defendant willfully failed to pay all wages owed to operators upon termination of employment because of its policy of not paying overtime." Dkt. 74 at 7-8. Defendant does not dispute that there are common questions, and as stated at the hearing, the court finds that the commonality requirement is met.

As to typicality, plaintiff argues that he was employed as an operator during the class period, as were the other members of the proposed class. Defendant's challenge is based on the fact that plaintiff, as a former employee, lacks standing to pursue injunctive relief on behalf of the class. However, as discussed at the hearing, plaintiff was permitted to file a motion to add a current employee as a new class representative, and on October 9, 2015, the court granted the motion. See Dkt. 90. Thus, defendant's challenge to typicality is now moot, and the court finds that the typicality requirement is met.

The adequacy factor has been the source of much dispute between the parties. As an initial matter, defendant raised challenges to both the adequacy of plaintiff as well as the adequacy of plaintiff's counsel. The challenge to plaintiff's adequacy was based on the fact that plaintiff is a former employee, and the fact that his employment lasted only a few months. However, as discussed above in the context of typicality, the addition of a new class representative moots this challenge.

However, the adequacy of plaintiff's counsel is a separate matter. In its opposition, defendant argued that plaintiff's counsel "has offered money to class members in order to keep them in the class." Dkt. 79 at 17. For support, defendant submitted a declaration from Eddie Chavez, a current employee of defendant's and a

1   member of the putative class.  Mr. Chavez states that he originally opted into the FLSA

2   collective action, but ultimately reconsidered and withdrew his consent.  Dkt. 79-3, ¶ 5.

3   Mr. Chavez claims that "Mr. Robinson's law firm contacted me multiple times after I

4   withdrew my consent," and that "Mr. Robinson's lawyers offered me $800 to attend a

5   meeting with them but I declined."  Id., ¶¶ 6-7.

6        At the class certification hearing, the court questioned plaintiff's counsel about

7   these allegations.  Plaintiff's counsel denied the allegations, and further alleged that there

8   was "specific evidence" about Mr. Chavez being "bullied" and "harassed" by his

9   employer, suggesting that he may have been coerced into writing the declaration.  See

10  Dkt. 91 at 34-35.  The court opted to conduct an evidentiary hearing, allowing Mr. Chavez

11  to present his testimony and allowing plaintiff's counsel an opportunity to cross-examine

12  him.

13       The evidentiary hearing was held on September 25, 2015.  Mr. Chavez testified

14  that he had contact with an individual named Erica, who he believed to be a secretary for

15  plaintiff's counsel.  Dkt. 85 at 5-7.  Mr. Chavez stated that, in a "quick conversation" with

16  Erica, he was told that "the lawyers representing Robinson were going to pay for the

17  interview," and was told that the exact amount would be $800.  Id. at 10.  Mr. Chavez

18  also clarified that, at the time of the offer, he had not yet withdrawn from the suit.  Id. at

19  11.

20       After Mr. Chavez's testimony, the court questioned plaintiff's counsel about the

21  identity of "Erica" and about her role at the law firm.  Plaintiff's counsel explained that

22  "Erica" was Erica Valencia, a former paralegal with the firm, whose employment had

23  ended in late July 2015.  Plaintiff's counsel represented that he still had contact

24  information for Ms. Valencia, and the court set an evidentiary hearing for October 21,

25  2015 to hear her testimony.

26       Ms. Valencia appeared at the evidentiary hearing, and testified that, while she did

27  speak to Mr. Chavez a number of times in early 2015, she never offered him money for

28  an interview or for any other reason.  Ms. Valenica further testified that Mr. Chavez was

1    reluctant to participate in the suit, and that he reported being retaliated against by his

2    employer and feared losing his job.

3          While the court takes Mr. Chavez's allegations seriously, a number of factors

4    warrant a finding of adequacy despite his testimony.  First, even if Mr. Chavez's

5    allegations are credited fully, they do not implicate plaintiff's counsel themselves or any of

6    their current employees.  Second, the nature of the conflicting allegations suggest that

7    the parties may have misunderstood each other – Mr. Chavez admitted that "it was a

8    quick conversation, because I was driving," and that, after being offered money, he said

9    "let's talk about this later because right now I'm driving and I really can't talk."  Dkt. 85 at

10   11.  Third, and most importantly, if the alleged conduct is determined to be true, it may

11   constitute an ethical violation on the part of plaintiff's counsel, but when viewed through

12   the lens of this specific case, it does not suggest that plaintiff's counsel will litigate this

13   action in a manner contrary to the interests of the class.  Thus, while the court is certainly

14   concerned about the nature of the allegations, and will be prepared to revisit the

15   "adequacy" determination if more evidence is uncovered, based on the current record,

16   the court finds that plaintiff's counsel has sufficiently established his firm's adequacy to

17   serve as class counsel.

18         The court will now turn to the Rule 23(b)(3) factors, starting with predominance.

19   Plaintiff argues that the common questions regarding the failure to pay overtime will

20   predominate as to each of the asserted claims, including the alleged failure to provide

21   accurate wage statements, the alleged failure to pay all wages due upon termination of

22   employment, etc.  Defendant's challenge to predominance is based on the fact that each

23   class member's damages will need to be calculated separately.

24         The single case cited by defendant is an exempt-misclassification case, and the

25   court held that  "in cases where exempt status depends upon an individualized

26   determination of an employee's work, and where plaintiffs allege no standard policy

27   governing how employees spend their time, common issues of law and fact may not

28   predominate."  Vinole v. Countrywide Home Loans, 571 F.3d 935, 946-47 (9th Cir. 2009).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   This case involves no such individualized determination, making the cases cited by

2   plaintiff (holding that individualized damages calculations do not defeat certification) more

3   applicable.  See, e.g., Leyva v. Medline Indus., 716 F.3d 510 (9th Cir. 2013) ("the amount

4   of damages is invariably an individual question and does not defeat certification"); Pulaski

5   & Middleman, LLC v. Google, Inc., 802 F.3d 979, 988 (9th Cir. 2015) (same).  Given that

6   the damages issue is defendant's only challenge to predominance, the court finds that

7   the predominance factor is met, as stated at the hearing.

8   As to superiority, defendant does not directly challenge this factor in its opposition

9   brief, though it does argue that individual trials would be no less judicially economical and

10   would also "respect the rights of class members."  The court discussed this factor more

11   fully at the hearing, noting that there were essentially three "tracks" of claims – the FLSA

12   collective action, the Rule 23 class action, and the PAGA claim.  In particular, the court

13   noted that, while the FLSA collective action and the Rule 23 class action were both

14   largely based on the overtime-related allegations, and thus would be subject to common

15   proof, the PAGA claim was largely based on the alleged failure to provide rest breaks,

16   which could require individualized determinations.  Overall, as discussed at the hearing,

17   the court finds that the concerns are not yet sufficiently serious to prevent certification,

18   but if later discovery reveals that the class may become unmanageable or unworkable,

19   the court may exercise its discretion to change its determination.  However, based on the

20   current record, the court finds that the superiority requirement is met, as stated at the

21   hearing.

22   Thus, having shown that the requirements of Rule 23(a) and Rule 23(b)(3) are

23   met, the court GRANTS plaintiff's motion for class certification.

24   Finally, the court notes that the issue of whether injunctive relief may be sought

25   pursuant to a class certified under a Rule 23(b)(3) was not raised by the parties in their

26   briefs.  Instead, it was raised for the first time by the court at the September 25, 2015

27   evidentiary hearing.  And while plaintiff discussed the issue in the reply in support of his

28   motion to add a class representative, defendant has not yet had an opportunity to

respond to plaintiff's argument.  Thus, while the class is certified under Rule 23(b)(3), the court will not make a determination as to whether injunctive relief may be sought pursuant to this class, or whether plaintiff must also seek certification under Rule 23(b)(2), until after it has heard arguments from both sides.  Given that plaintiff has already presented authority for his argument in the above-mentioned reply in support of his motion to add class representative (Dkt. 88), defendant shall be permitted to file a response (not to exceed ten pages) no later than **January 11, 2016**, and plaintiff may file a reply (not to exceed ten pages) no later than **January 19, 2016**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is GRANTED. The court will conduct a case management conference on **January 21, 2016**, at **2:00pm**. A joint case management statement must be filed no later than **January 14, 2016**.  At the case management conference, the parties should be prepared to discuss the issues raised in the recently-filed "notice of late filing to consent to become party plaintiff in FLSA action" (Dkt. 93), and the "notice of purported withdrawal of consent to be party plaintiff" (Dkt. 94).

**IT IS SO ORDERED.**

Dated:  December 22, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge

9