UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HAROLD C. ROBINSON, et al.,

    Plaintiffs,

v.

OPEN TOP SIGHTSEEING SAN FRANCISCO, LLC

    Defendant.

Case No. 14-cv-00852-PJH

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 133, 135

Defendant's motion for partial summary judgment and plaintiffs' motion for summary judgment came on for hearing before this court on May 10, 2017. Plaintiffs appeared through their counsel, Joel Young and Steven Tidrick. Defendant appeared through its counsel, Michael Purcell. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES defendant's motion for partial summary judgment and GRANTS IN PART and DENIES IN PART plaintiffs' motion for summary judgment, for the following reasons.

**BACKGROUND**

**A.    Factual Background**

This is a wage and hour case that was originally filed in state court on November 26, 2013, then removed to federal court on February 26, 2014. Dkt. 1. Plaintiffs Harold Robinson, Jr. and Lawrence Muse ("plaintiffs") represent several certified classes of bus operators for defendant Open Top Sightseeing San Francisco, LLC ("defendant" or "Open Top"). Robinson is a former employee of Open Top. See Dkt. 133-1, Decl. of Harold Robinson, Jr. ("Robinson Decl.") ¶ 2. Muse, a current employee, was added as a class representative pursuant to an unopposed motion to ensure typicality of the class representation. See Dkt. 90.

Open Top is a tour bus company providing "hop on/hop off" sightseeing bus tours in the San Francisco Bay Area using double-decker, open-top buses. Young Decl. Ex. D, 30(b)(6) Dep. of Andrew Smith ("Smith Dep.") at 9:16–20, 307:7–12. Open Top is a subsidiary of Open Top Sightseeing USA ("Open Top USA"), which owns similar tour companies in a number of American cities, including Las Vegas, New York, Miami, and Washington, D.C. Dkt. 139-4, Decl. of Andrew Smith ("Smith Decl.") ¶ 3. Open Top USA is in turn owned by Big Bus Tours Ltd., which is headquartered in London; other subsidiaries offer similar services in international cities such as Paris, London, and Hong Kong. Smith Decl. ¶ 4.

Plaintiffs allege a number of wage and hour violations. For purposes of these motions, the essential allegation is that Open Top's bus operators worked more than 40 hours per week, but were not paid overtime compensation. The operative SAC contains ten claims, but only six remain in the case: (1) violations of the Fair Labor Standards Act ("FLSA") for failure to pay overtime; (2) failure to provide accurate wage statements under California Labor Code § 226 and Wage Order 9; (3) waiting time penalties under California Labor Code §§ 201–203; (4) failure to provide rest breaks under California Labor Code § 226.7; (5) violations of California Business and Professions Code § 17200 ("the UCL"); and (6) violations of the Private Attorneys General Act ("PAGA"). See Dkt. 23; Dkt. 95 at 2 n.1. The instant motions concern only the FLSA claim, the UCL claim, and the waiting time penalties claim.

**B.     Procedural History**

On April 23, 2014, the court dismissed the original complaint based on a failure to plead the willfulness and interstate commerce elements of the FLSA claim. Dkt. 21. The SAC followed on May 21, 2014. Dkt. 23. On July 23, 2014, the court denied defendant's second motion to dismiss. Dkt. 38.

On December 24, 2014, the court granted plaintiffs' Hoffman-La Roche motion to certify an opt-in FLSA collective. Dkt. 51. The court ordered that notice to be sent to "all individuals who are currently employed, or formerly have been employed, by [Open Top]

2

1 as a bus operator or in an equivalent position in California any time on or after December 24, 2011." Id. ¶ 2.

In a series of orders in late 2015 and early 2016, the court certified a number of different classes pursuant to Federal Rule of Civil Procedure 23:

- **The "California Class" under Rule 23(b)(3).** "All individuals who are currently employed, or formerly have been employed, by Open Top Sightseeing San Francisco, LLC as a bus operator at any time on or after November 26, 2010." This class relates to the waiting time penalties and accurate wage statement causes of action. Dkt. 95 at 2.
- **The "Section 17200 Class" under Rule 23(b)(3).** "All individuals who are currently employed, or formerly have been employed, by Open Top Sightseeing San Francisco, LLC as a bus operator at any time on or after November 26, 2009." This class relates to the UCL claim.
- **The "Injunctive Class" under Rule 23(b)(2).** "All people employed by Open Top Sightseeing San Francisco, LLC in California as bus operators." Dkt. 111 at 2. This class relates to claims for injunctive relief.

Excluded from all of the classes are persons "employed by counsel for plaintiff in this action, and any judge to whom this action is assigned and his or her immediate family members." See Dkt. 115 at 2.

The parties have now filed cross motions for partial summary judgment. Defendant seeks a ruling that, as a matter of law, the recovery period on plaintiffs' UCL claim is limited by FLSA's two- or three-year statute of limitations, and not UCL's four-year limitations period. Dkt. 135. Plaintiffs seek judgment as a matter of law as to Open Top's liability (but not its damages) on three claims, all based on unpaid overtime: the FLSA claim, the UCL claim, and waiting time penalties claim. Dkt. 133.

**DISCUSSION**

**A.     Legal Standard**

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

3

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105–06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324–25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247–48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011). In adjudicating cross-motions for summary judgment, the Ninth Circuit "evaluate[s] each motion

4

separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." ACLU of Nevada v. City of Las Vegas, 466 F.3d 784, 790–91 (9th Cir. 2006) (citations omitted).

**B.     Analysis**

    **1.     Defendant's Motion for Partial Summary Judgment**

Defendant seeks partial summary judgment only on a single legal issue: whether the four-year statute of limitations of the UCL, or FLSA's two-year limitations period (three years for "willful" violations), applies to plaintiffs' claims for unpaid overtime under the UCL. Defendant argues that using UCL's longer statute of limitations is improper when the predicate violation is based purely on federal law. Alternatively, defendant argues that the UCL claim cannot be premised on FLSA overtime violations because California state overtime laws "clearly permit the conduct." See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 183 (1999). Neither argument has merit.

        **i.     Whether a UCL "Unlawful" Claim Can Be Premised on FLSA**

Although it was not squarely presented in the papers, at oral argument defendant asserted that plaintiffs' UCL overtime claim was not tenable at all, because plaintiffs cannot use federal overtime law (FLSA) as a predicate for their UCL claim when California labor laws do not require the payment of overtime.

The UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech, 20 Cal. 4th at 180. Plaintiffs' overtime claim under the UCL relies on violations of FLSA, a federal law, alleging that defendant's failure to pay the overtime mandated by FLSA was an "unlawful" business practice. Many courts have permitted UCL claims to be predicated on FLSA violations. See, e.g., Bahramipour v. Citigroup Global Markets, Inc., No. C 04-4440 CW, 2006 WL 449132, at *2 (N.D. Cal. Feb. 22, 2006); Tomlinson v. Indymac Bank, F.S.B., 359 F. Supp. 2d 898, 901 (C.D. Cal. 2005); Parks v. Eastwood Ins. Servs., No. SACV02507GLTMLGX, 2004 WL 5506690, at *1 (C.D. Cal. Mar. 11, 2004). This is logical, because "[v]irtually any law, federal, state or local can serve as a

5

predicate for an action under [the UCL]." Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 718 (2001) (citation omitted).

Defendant argues that this case is different because, even if Open Top was required to pay overtime to its drivers under FLSA, overtime was not required under California law. See Mot. at 9 n.1 (citing California Industrial Welfare Commission Order No. 9-2001). Because California labor law allegedly does not require overtime, defendant relies on the Cel-Tech decision to argue that the UCL overtime claim is "forestall[ed]" because another state law "clearly permit[s] the conduct." Cel-Tech, 20 Cal. 4th at 183.

As an initial matter, defendant has not actually shown that the state law overtime exemption actually applies to its drivers. (Plaintiffs did not make a claim under state overtime law, so the matter is not an issue in this case.) Nonetheless, even assuming that overtime was not required under state overtime law, this would not prohibit a UCL claim based on violations of federal overtime law. The court in Cel-Tech distinguished between "(1) not making an activity unlawful, and (2) making that activity lawful," with the UCL claim being foreclosed only in the latter situation. 20 Cal. 4th at 183. The fact that California may not require overtime for certain employees does not affirmatively make a failure to pay overtime "lawful" if federal law requires overtime—it merely means that California did not itself make the practice unlawful. In short, "the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair [under the UCL]." Cel-Tech, 20 Cal. 4th at 184. Plaintiffs are therefore permitted to base their UCL overtime claim on FLSA violations.

### ii. Which Statute of Limitations Applies to the UCL claims

The primary argument in defendant's motion for partial summary judgment concerns the appropriate statute of limitations for plaintiffs' UCL overtime claim. Defendant urges the court to apply the statute of limitations of FLSA, the predicate "unlawful" violation. Plaintiffs argue that defendant has waived this defense and that, in any event, the UCL's four-year statute of limitations applies to its UCL claims.

The first issue on defendant's motion is whether its statute of limitations argument is an affirmative defense that was waived because it was not pleaded in the answer. The Federal Rules of Civil Procedure state that a statute of limitations defense "must" be included in the initial responsive pleading. Fed. R. Civ. P. 8(c)(1). However, the Ninth Circuit has held that failure to raise a statute of limitations defense in a defendant's initial pleading does not result in waiver unless the plaintiff would be prejudiced. Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984) ("[A]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment."). Although plaintiffs allege "additional discovery and delay" as prejudice, which statute of limitations applies to the UCL claim is a purely legal matter that does not necessitate any additional discovery.

In any event, defendant's argument that FLSA's statute of limitations applies to plaintiffs' UCL claim is meritless. California courts have held that a four-year statute of limitations applies even if a UCL claim is predicated on an "unlawful" violation of a statute with a shorter statute of limitations:

> [The UCL's statute of limitations] is clear. It provides that "[a]ny action to enforce any cause of action under this chapter shall be commenced within four years after the cause of action accrued." (Italics added.) . . . It follows that an action to recover wages that might be barred if brought pursuant to Labor Code section 1194 still may be pursued as a UCL action seeking restitution pursuant to section 17203 if the failure to pay constitutes a business practice. Nonetheless, the language of section 17208 admits of no exceptions. <u>Any action on any UCL cause of action is subject to the four-year period of limitations created by that section</u>.

Cortez v. Purolator Air Filtration Prod. Co., 23 Cal. 4th 163, 178–79 (2000) (emphasis added); accord Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1177 (9th Cir. 2016) ("As a general matter, the UCL statute of limitations will apply to a UCL claim, even when that claim is based on an underlying law with its own separate statute of limitations.").

Defendant attempts to distinguish Cortez because the predicate violation in that case was based on state law, not federal law. However, Cortez explicitly reaches "any UCL cause of action," a fact that the Ninth Circuit has recognized. In Beaver, the Ninth Circuit noted that "[a]lthough the parties were unable to point us to a case that expressly

7

discussed whether [Cortez] extends to UCL claims predicated on violations of federal law, we read Cortez as announcing a general rule for all UCL claims regardless of the source of the law allegedly violated." 816 F.3d at 1177 n.3. The Ninth Circuit therefore applied a four-year statute of limitations to a UCL claim predicated on the federal Interstate Land Sales Full Disclosure Act. Id. at 1178.

Defendant's reliance on Silvas v. E*Trade Mortgage Corporation, 514 F.3d 1001 (9th Cir. 2008), and O'Donovan v. CashCall, Inc., No. C 08-03174 MEJ, 2012 WL 2568174 (N.D. Cal. July 2, 2012), is misplaced. Silvas held that the Home Owners' Loan Act ("HOLA") preempted the UCL claims in that case, which were predicated on the Truth in Lending Act ("TILA"). 514 F.3d at 1006–08. Silvas only discusses the UCL statute of limitations issue in dicta, and in a footnote. Id. at 1007 n.3 ("[T]o go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law."). Silvas's holding was based on federal preemption; it is not a construction of the UCL's statute of limitations, which is a state law matter.

O'Donovan relies on Silvas's footnote, and it was decided before Beaver. O'Donovan thus did not have the benefit of the Ninth Circuit's holding that the Cortez rule applies even when the UCL predicate sounds in federal law. Indeed, O'Donovan noted that whether "UCL claims predicated on other federal law should be governed by that federal law's statute of limitations" is "an unsettled issue." 2012 WL 2568174 at *3. Beaver has now settled the issue. 816 F.3d at 1177 n.3. Indeed, Beaver criticized O'Donovan (and similar district court decisions) as having "adopted an unnecessarily broad reading of footnote 3 in Silvas by extending its reasoning outside of HOLA's field preemption context." Id. at 1180 n.5. Instead, Silvas's rule should be "limited to cases involving field preemption under HOLA." Id. at 1180.

The UCL's four-year statute of limitations thus applies to the UCL claim unless FLSA preempts the UCL claim. On this matter, too, there is controlling Ninth Circuit authority. In Wang v. Chinese Daily News, Inc., the Ninth Circuit conducted an extensive

8

preemption analysis and held that "FLSA does not preempt a state-law § 17200 claim that 'borrows' its substantive standard from FLSA." 623 F.3d 743, 759–60 (9th Cir. 2010), judgment vacated on other grounds, 565 U.S. 801 (2011). Although the Supreme Court vacated the Wang decision and remanded for further consideration in light of Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011), that remand concerned Rule 23 class certification issues. Wang's holding on FLSA preemption remains good law, or at the least, highly persuasive authority. See Roberts v. Trimac Transp. Servs. (W.), Inc., No. C12-05302 HRL, 2013 WL 1441999, at *2 (N.D. Cal. Apr. 9, 2013) ("The court believes that Wang continues to be good authority on the preemption issue . . . Even if it is not, the court finds persuasive the discussion and reasoning in that case.").

In sum, California law provides for a four-year statute of limitations on UCL claims regardless of whether the predicate "unlawful" violation has a shorter statute of limitations, and regardless of whether the predicate violation is based on federal or state law. As defendant concedes, FLSA does not preempt UCL claims. Therefore, a four-year statute of limitations applies to the UCL claims, and the section 17200 class previously certified by the court remains intact as certified. The court therefore DENIES defendant's motion for partial summary judgment.

**2. Plaintiffs' Motion for Summary Judgment**

Plaintiffs' motion seeks summary judgment as to Open Top's liability on the FLSA, UCL, and waiting time penalties claims that are based on unpaid overtime. As both parties acknowledge, summary judgment of liability on all of these claims hinges on whether plaintiffs can establish liability under FLSA.

FLSA requires that enterprises engaged in commerce must pay employees who work more than 40 hours in a workweek overtime at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); Adair v. City of Kirkland,185 F.3d 1055, 1059 (9th Cir. 1999). Defendant concedes that (i) Open Top is an enterprise engaged in commerce; (ii) the bus operators are Open Top's employees;

9

1  (iii) the bus operators routinely worked more than 40 hours in a single workweek; and (iv)
2  the bus operators were not paid at an overtime rate for this work until May 1, 2016.

Thus, defendant only contests FLSA liability on a single ground: whether the bus operators are exempt from FLSA based on the Motor Carriers Act ("MCA"). Defendant also argues that there are disputed issues of fact as to whether its violations were willful, which would extend the FLSA limitations period from two years to three years. See 29 U.S.C. § 255(a).

### i. Whether the MCA Exemption Was Waived

As an initial matter, plaintiffs argue that defendant has waived its MCA exemption argument because the exemption was not pleaded as a defense in defendant's answer. An FLSA exemption is an "affirmative defense" that should have been pleaded in the answer. See Corning Glass Works v. Brennan, 417 U.S. 188, 196–97, (1974) (FLSA exemptions are affirmative defenses); Fed. R. Civ. P. 8(c). However, in the Ninth Circuit, affirmative defenses may be raised in a motion for summary judgment, even if not pleaded, so long as there is no prejudice to the plaintiff. Healy Tibbitts Const. Co. v. Ins. Co. of N. Am., 679 F.2d 803, 804 (9th Cir. 1982).

Accordingly, the key question is whether plaintiffs would be prejudiced by the assertion of the MCA exemption at this stage of the litigation. This turns on whether plaintiffs had notice that defendant intended to rely on this defense. See Ulin v. Lovell's Antique Gallery, No. C-09-03160 EDL, 2010 WL 3768012, at *13 (N.D. Cal. Sept. 22, 2010) (finding that FLSA exemption was waived because it was not pleaded, plaintiff was "unaware of this defense," and plaintiff "did not obtain discovery" on it as a result).

Plaintiffs argue that they will be prejudiced because permitting defendant to amend its answer will lead to "additional discovery," and because they were unable to move to strike or for summary judgment on this defense. However, plaintiffs do not claim that they were unaware of the MCA issue, which was raised early in the proceedings. See Dkt. 79, Def.'s Opp'n to Mot. for Class Certification at 10 ("Open Top does not dispute that it does have a policy of not paying overtime to bus operators as permitted by the

10

Motor Carrier Exception to the Fair Labor Standards Act overtime requirements."); Dkt. 136, Tr. of Dec. 24, 2014 Hearing 4:4–8 ("The court: Your client's position is that [it] engaged in interstate commerce and, therefore, was a motor carrier exempt from this particular provision of [FLSA]? [Defendant's counsel]: Yes, your honor."). Plaintiffs have obtained discovery on the MCA exemption. See Tidrick Reply Decl. Ex. C.

Under these circumstances, plaintiffs have not shown prejudice. The MCA exemption has been an issue in this case from its earliest stages, and plaintiffs were put on notice of this defense. The court will therefore consider the MCA exemption on the merits even though it was not pleaded in the answer.

### ii. Whether the MCA Exemption Applies to the Bus Operators

#### a. Legal Standard

The MCA exemption to FLSA applies to any employee whose qualifications and maximum hours are subject to the regulatory authority of the Secretary of Transportation. 29 U.S.C. 213(b)(1). That authority reaches employees of "motor carriers," including drivers who "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA." 29 C.F.R. § 782.2(b); 49 U.S.C. § 31502.

For the MCA exemption to apply, the Secretary of Transportation need only have the authority to regulate the carrier; it need not actually do so. Southland Gasoline Co. v. Bayley, 319 U.S. 44, 47–48 (1943). There is no concurrent jurisdiction between FLSA and the MCA. Jones v. Giles, 741 F.2d 245, 249 (9th Cir. 1984). The employer bears the burden of proving the MCA exemption, which is to be "construed narrowly." Klitzke v. Steiner Corp., 110 F.3d 1465, 1468 (9th Cir. 1997).

There is extensive case law on the scope of the MCA exemption when only some of an employer's drivers engage in interstate commerce, beginning with the Supreme Court's decision in Morris v. McComb, 332 U.S. 422 (1947). Morris concerned a Michigan-based transporter of steel. Id. at 426. Most of this business's shipping was

11

intrastate, such that "on the average only about 4% of [the drivers'] time and effort has been, or is likely to be, devoted to services in interstate commerce." Id. at 431. However, because the interstate trips "were distributed generally throughout the year" and "shared indiscriminately by [all of] the drivers," the Court concluded that interstate commerce was "a natural, integral, and apparently inseparable" part of their work. Id. at 433. The MCA exemption therefore applied. Id. at 437.

In the Ninth Circuit, the application of the MCA exemption is further governed by Reich v. American Driver Service, Inc., 33 F.3d 1153, 1155–57 (9th Cir. 1994). Reich noted that although a small amount of regular interstate activity can be sufficient to invoke the MCA exemption, "an employee's minor involvement in interstate commerce does not necessarily subject that employee to the Secretary of Transportation's jurisdiction for an unlimited period of time, and if the employee's minor involvement can be characterized as de minimis, that employee may not be subject to the Secretary of Transportation's jurisdiction at all." Id. at 1155–56 (citations omitted). Reich involved a transporter of sugar beets, who engaged in interstate shipping only during the latter part of the harvesting season. Id. at 1154. The Ninth Circuit held that the jurisdiction of the Secretary of Transportation was not invoked by a mere "reasonable expectation" of engaging in interstate commerce. Rather, FLSA governed until the employer established that it actually engaged in interstate commerce, after which the MCA exemption presumptively applied for four months to that driver. Id. at 1157. In a situation where some drivers had made interstate trips and others had not, the intrastate drivers will be subject to the MCA exemption only if they could "reasonably have been expected" to make interstate trips. Id.

District courts following Reich have understood the MCA exemption to apply on a driver-by-driver basis. Sturm v. CB Transp., Inc., 943 F. Supp. 2d 1102, 1112 (D. Idaho 2013); Veliz v. Cintas Corp., No. C 03-1180RS, 2009 WL 1107702, at *7–*10 (N.D. Cal. Apr. 23, 2009). "A driver is considered to be driving in interstate commerce if the driver is called upon to drive in interstate commerce as part of the driver's regular employment, or,

even if the driver has not personally driven in interstate commerce, if, because of company policy and activity, the driver could reasonably be expected to drive in interstate commerce." Bishop v. Petro-Chem. Transp., LLC, 582 F. Supp. 2d 1290, 1298 (E.D. Cal. 2008). If, as in Morris, a carrier is engaged in interstate commerce on a continuous, randomly assigned basis, then all of a motor carrier's drivers may be exempted from FLSA. Id. In determining whether the MCA exemption applies when only some drivers make interstate trips, courts consider factors such as "(1) the proportion of interstate to intrastate employee activity; (2) the method by which a carrier assigns the interstate activity to its employees; and (3) the overall nature of the carrier's business." Sturm, 943 F. Supp. 2d at 1113 (citations omitted); accord Roberts v. Trimac Transp. Servs. (W.), Inc., No. 5:12-CV-05302 HRL, 2013 WL 5442388, at *5 (N.D. Cal. Sept. 30, 2013).

The Ninth Circuit has also recognized a de minimis limitation on the MCA exemption, which means that the jurisdiction of the Secretary of Transportation "extends only to drivers who reasonably could be expected to make one of the carrier's interstate runs, and that means more than a remote possibility." Gilmer v. Alameda-Contra Costa Transit Dist., No. C 08-05186 CW, 2010 WL 289299, at *12 (N.D. Cal. Jan. 15, 2010) (citing Reich, 33 F.3d at 1156). Courts applying the de minimis exception have found it to apply when interstate activity constitutes about 1% or less of the employees' time. See Veliz, 2009 WL 1107702, at *9 (interstate activity of "1% or less of plaintiffs' deliveries. . . is not sufficient as a matter of law to trigger the MCA exemption"); Masson v. Ecolab, Inc., No. 04 CIV. 4488 (MBM), 2005 WL 2000133, at *10 (S.D.N.Y. Aug. 17, 2005) ("Overall, the de minimis rule has been held to apply to drivers who, as a class, spent less than one percent of their time traveling across state lines and were not in the regular course of their employment expected to drive across state lines.").

### b. Application to the Undisputed Facts

Defendant argues that there are triable issues of fact as to the applicability of the MCA exemption based on its interstate activity. Open Top points to three categories of alleged interstate activity: (1) regular transit through the Presidio on some of its tour

13

routes; (2) "cruise calls," whereby Open Top picks up passengers who have arrived in the Port of San Francisco from international or interstate cruises; and (3) interstate transfers of buses to and from other Open Top USA subsidiaries, which occur several times per year.[1] The court finds that the first two categories are not <u>interstate</u> transportation of passengers as a matter of law. As to the third category, even assuming that the bus transfers qualify as an interstate transportation of goods for the purpose of this motion, the bus transfers occur so infrequently that any interstate activity is de minimis.

***Daily Trips Through the Presidio.*** Bus transit through the Presidio is, quite literally, not interstate transportation of passengers by Open Top. The Presidio is a part of the Golden Gate National Recreation Area, which is run by the National Park Service. Defendant offers no authority establishing that a trip through a national park or recreation area constitutes interstate transportation of passengers even though no state borders are actually crossed. Driving through the Presidio is therefore not interstate activity that could support the MCA exemption.

***Cruise Calls.*** The cruise calls are also, as a literal matter, purely intrastate transportation: the passengers are picked up at the Port of San Francisco, and transported around the Bay Area. However, this intrastate transportation could nonetheless constitute interstate commerce if it was "a part of a 'practical continuity of movement' [of passengers] across State lines from the point of origin to the point of destination." See 29 C.F.R. § 782.7(b)(1). Here, however, defendant has submitted no evidence of a "through-ticketing" arrangement with the cruise companies, which is typically required by courts in analogous situations. See <u>United Transp. Union Local 759 v. Orange Newark Elizabeth Bus Co.</u>, 111 F. Supp. 2d 514, 519 (D.N.J. 2000) ("[I]ntrastate transportation of passengers using a single ticket for inter and intra state

---

[1] Open Top also notes that it has a permit from U.S. Department of Transportation to operate as an interstate carrier, has its drivers submit to drug screening, reports accidents to the Department of Transportation, and otherwise conforms with federal motor carrier safety regulations. Smith Decl. ¶¶ 23–30, Exs. E–G. Defendant cites no authority as to why the permit or its compliance would be dispositive of the legal question of whether the MCA exemption applies.

14

travel is sufficient to place [defendant] in interstate transportation and exempt it from the overtime pay provisions of the FLSA.").

Gilmer v. Alameda-Contra Costa Transit District, No. C 08-05186 CW, 2010 WL 289299 (N.D. Cal. Jan. 15, 2010), is instructive on this point. In Gilmer, the court found that the MCA exemption did not apply even though the intrastate buses offered service to the Port of Oakland, Oakland International Airport, and Amtrak stations, because there was no "single ticket or prearranged package that can be purchased for travel on both Amtrak and Defendant's buses." Id. at *12. As in Gilmer, Open Top's drivers do not— save for the occasional bus transfers—actually cross state lines. Defendant, who has the burden of proving the MCA exemption, has not put forth any evidence of a through-ticketing arrangement that would create a triable issue of fact on the "cruise calls." Open Top does have an arrangement with some cruise lines to allow passengers to buy their Open Top tickets at sea, Smith Decl. ¶ 22, but the Open Top ticket being purchased is for purely intrastate travel: tours around the Bay Area. Smith Dep. 183:16–184:12.

***The Interstate Bus Transfers.*** Thus, the only possible source of interstate activity is defendant's transfers of buses across state lines, from one Open Top USA subsidiary to another. Attempting to create a triable issue of fact on the MCA exemption, Andrew Smith, the general manager of Open Top, avers that Open Top makes "eight to ten" such bus transfers per calendar year. Smith Decl. ¶ 6. In responding to plaintiffs' interrogatories, Open Top identified 29 trips from 2011–2015 that crossed state lines. See Tidrick Reply Decl. Ex. C at 3–6. These trips principally transported buses between San Francisco and Las Vegas, Miami, and Hyattsville, Maryland (a suburb of Washington, D.C.). Id. The interrogatory response itself and Smith's deposition testimony indicated that "no passengers" or "goods" were transported on these trips. See id.; Smith Dep. 195:25–196:6 ("It's purely a bus."). The interstate trips involved 13 Open Top bus operators—although no driver is identified for several of the trips—out of over a hundred class members. See Tidrick Reply Decl. Ex. C at 3–6; Tidrick Decl. Ex. M (list of class members).

15

Intrastate trips, in contrast, are the core of Open Top's business and occur on a daily basis. Smith testified that there were roughly 24 bus departures per day during the "non-peak" season, and 48 departures during the three "peak" months. Smith. Dep. 193:6–195:12. These estimates correspond to roughly 10,000 intrastate trips per year. Smith testified that each driver makes approximately 3.5 trips per day on an average shift. Id. at 196:6–15.

As a threshold question, it is not clear whether the interstate transfer of buses even qualifies as "interstate commerce" because no goods or passengers are transported on the interstate journeys. 49 U.S.C. § 13501 ("The Secretary of Transportation has] jurisdiction . . . over transportation by motor carrier . . . to the extent that passengers, property, or both, are transported by motor carrier"). Although the bus itself is transported, plaintiffs argue that the bus is not a "good" because the ultimate consumer (whichever Open Top subsidiary is receiving the bus), has already taken possession prior to the travel. See 29 U.S.C. § 203(i) (FLSA "goods" definition). However, defendant has pointed to some evidence that miscellaneous goods, such branded apparel, were transferred along with the buses. See Smith Decl. Ex. A; but see Smith Dep. 195:25–196:6 ("It's purely a bus.").

For purposes of resolving this motion, the court will presume that Open Top's bus transfers qualify as interstate commerce. Nonetheless, even resolving all factual disputes in defendant's favor, the court finds that the de minimis limitation to the MCA exemption applies.

Accepting the highest estimate in Smith's declaration, Open Top makes ten interstate trips per year. This constitutes only 0.1% of the 10,000 intrastate trips made per year. That figure is an order of magnitude less than the 1% benchmark that courts have found sufficient to support a de minimis finding. See Veliz, 2009 WL 1107702, at *9; Masson, 2005 WL 2000133, at *10. Of course, the interstate trips are longer in length and duration than the intrastate trips. However, even if the percentage is calculated on the basis of the drivers' time, it would still be de minimis given the nature of Open Top's

16

business and how infrequent the interstate trips are. It is defendant's burden to establish that the MCA exemption applies, and Open Top has offered no estimate of the percentage of its bus operators' time that is devoted to the interstate bus transfers.

The other factors that courts have considered in MCA exemption cases support the conclusion that Open Top's interstate activity is de minimis. As to the assignment method for the interstate trips, Smith's declaration indicates that it is done "randomly." Smith Decl. ¶ 11. However, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (quotation omitted). Smith's declaration on Open Top's assignment method directly contradicts his deposition testimony, in which he "agree[d]" that the drivers of interstate routes were "not randomly selected." Smith Dep. 185:13–23. Rather, assignment is based on "who is the most available" as a "courtesy" to drivers with obligations at home precluding an overnight trip. Smith Dep. 184:16–185:6. Open Top asks which drivers are available and willing to travel interstate, and the company then picks one of the drivers who indicate that they are available. Smith Dep. 185:24–186:5. The evidence thus shows that the assignment method for interstate bus transfers is not random, such that drivers would not "reasonably have been expected" to make interstate trips. Reich, 33 F.3d at 1157.

Finally, the "overall nature" of Open Top's business strongly supports the applicability of the de minimis limitation. Sturm, 943 F. Supp. 2d at 1113. Open Top's fundamental business is providing tours in and around the San Francisco Bay Area, consisting of fixed bus routes, which do not cross state lines. Although the majority of Open Top's customers may come from out of state, there is no evidence Open Top has ever actually transported a passenger across state lines. The evidence that it transported goods interstate is limited: this was done, if at all, only in association with the interstate bus transfers that happened a handful of times per year. It is simply not in the general nature of Open Top's business to transport goods or passengers interstate.

In sum, even resolving all factual disputes in favor of Open Top and drawing all justifiable inferences in its favor, the court finds that defendant has not submitted evidence from which a factfinder could conclude that the MCA exemption applies. The court therefore GRANTS plaintiffs' motion for summary judgment on Open Top's liability on the FLSA overtime claim. Liability on the UCL and waiting time penalties claim, as well as liquidated damages under FLSA,[2] is derivative of the FLSA overtime claim. The court thus GRANTS summary judgment as to liability on those claims as well.[3]

### iii. Whether Defendant's FLSA Violation Was "Willful"

The final issue is whether the court can conclude that the FLSA violation was "willful" as a matter of law, such that a three-year statute of limitations applies. An FLSA violation is "willful" when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Although a "merely negligent" FLSA violation will not suffice, a finding of willfulness is appropriate when an employer was "on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them," or when "an employer disregarded the very 'possibility' that it was violating the statute." Alvarez v. IBP, Inc., 339 F.3d 894, 908–09 (9th Cir. 2003). "An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts willfully." Haro v. City of Los Angeles, 745 F.3d 1249, 1258 (9th Cir. 2014).

---

[2] An employer who violates the FLSA shall be liable for "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C § 216(b). However, the court has discretion not to award liquidated damages if the employer proves that it acted in "good faith" with "reasonable grounds" to believe that its actions did not violate FLSA. 29 U.S.C. § 260; Flores v. City of San Gabriel, 824 F.3d 890, 904–05 (9th Cir. 2016). Defendant does not attempt to meet its burden to show "good faith."

[3] Plaintiffs did not move separately for summary judgment on defendant's MCA exemption defense. However, "a court may grant summary judgment without notice if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the motion.'" In re Rothery, 143 F.3d 546, 549 (9th Cir. 1998). Here, defendant had both notice and a full opportunity to brief the applicability of the MCA exemption, having raised and argued the matter in detail in its opposition brief and at the May 10, 2017 hearing. Moreover, it not clear how plaintiffs could have moved for summary judgment separately on the MCA exemption when the defense was not raised in Open Top's answer.

18

Defendant argues that "many triable issues of fact" preclude summary judgment on willfulness, but it identities only two disputed issues: (1) Open Top believed that the MCA exemption applied to its drivers; and (2) Open Top denies that any driver ever complained to it about not receiving overtime. Open Top does not dispute the other evidence that plaintiffs rely upon to show willfulness, to wit, that defendant: (1) was aware of FLSA; (2) knew that the Washington, D.C. Open Top subsidiary paid overtime to its drivers; (3) never conducted an audit of overtime policies; (4) never sought an opinion from a government agency on the issue; and (5) never inquired with anyone about its FLSA compliance until this lawsuit was filed.

The court finds that summary judgment on willfulness is inappropriate. Open Top denies that any of its drivers complained about overtime prior to this suit. Plaintiffs' declarations state that they complained about overtime, but they do not say when they complained. See, e.g., Robinson Decl. ¶ 5. Plaintiffs have thus not shown when defendant was put on notice of the potential FLSA violation. Although defendant appears not to have taken "active steps" to ensure FLSA compliance, the evidence simply shows inaction by defendant. The court cannot "presume that conduct was willful in the absence of evidence." Alvarez, 339 F.3d at 909. Moreover, as described above, the applicability of the MCA exemption is a factually and legally complicated issue; the case law is extensive, and the test is subtle, multi-factored, and fact-intensive.

For these reasons, as well as those stated on the record at the hearing, the court cannot find that Open Top's FLSA violation was willful, as opposed to negligent, as a matter of law. The court therefore DENIES summary judgment as to willfulness.

**CONCLUSION**

For the foregoing reasons, defendant's motion for partial summary judgment (Dkt. 135) is DENIED. Plaintiffs' motion for summary judgment (Dkt. 133) is GRANTED as to liability under the FLSA overtime claim, the UCL claim based on unpaid overtime, and the waiting time penalties claim. Plaintiffs' motion for summary judgment is DENIED as to the willfulness of defendant's FLSA violations.

19

By separate order, the court refers this matter for assignment to a Magistrate Judge for a settlement conference.

**IT IS SO ORDERED.**

Dated: May 24, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge