United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD C. ROBINSON, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>OPEN TOP SIGHTSEEING SAN FRANCISCO, LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-00852-PJH<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 240 |

Before the court is plaintiffs' motion for an award of attorneys' fees and costs. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiffs' motion as follows.

**BACKGROUND**

As the parties are intimately familiar with the factual and procedural background of this litigation, the court does not repeat it in full here.

In brief, plaintiffs' second amended complaint (the "SAC") contained ten causes of action. After plaintiffs voluntarily dismissed four of these claims at class certification, the six claims that remained were: (1) violations of the Fair Labor Standards Act ("FLSA") for failure to pay overtime; (2) failure to provide accurate wage statements under California Labor Code § 226 and Wage Order 9; (3) waiting time penalties under California Labor Code §§ 201–203; (4) failure to provide rest breaks under California Labor Code § 226.7; (5) violations of California Business and Professions Code § 17200 ("the UCL"); and (6) violations of the Private Attorneys General Act ("PAGA"). See Dkt. 23; Dkt. 95 at 2 n.1.

1  Of these, plaintiffs prevailed at summary judgment or trial on all but the rest break claim.

2  After a three-day jury trial that addressed willfulness under the FLSA, liability on
3  the rest break and the inaccurate wage statement claims, and a one-day bench trial on
4  damages, the court awarded plaintiffs $870,834.26 in unpaid wages, penalties, and
5  interest.

6  Plaintiffs now move for an award of attorneys' totaling $2,125,040.68 and litigation
7  costs totaling $20,083.04.[1]  Amongst other supporting documents, plaintiffs' counsel
8  submitted time notes, a declaration from Richard Pearl discussing the reasonableness of
9  plaintiffs' counsel's hourly rates, and the 2017 Laffey matrix.  Plaintiffs' counsel's
10  requested lodestar includes a reduction for time spent on the rest break claim and on
11  liquidated damages on which plaintiffs did not prevail.

12  In support of its opposition, defendant submitted various complaints and motions
13  that plaintiffs' counsel's primary law firm—the Tidrick Law Firm—filed in other federal
14  actions.[2]

## DISCUSSION

### A. Legal Standard

Plaintiffs' counsel is entitled to attorney's fees under the FLSA and California law. See 29 U.S.C. § 216(b) (court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); Cal. Lab. Code §§ 218 .5, 226(e)(1), and 2699(g)(1); Fed. R. Civ. P. 54; Cal. Code. Civ. P. §§ 1021, 1032, 1033.5; see also Newhouse v. Robert's Ilima Tours, Inc., 708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorney's fee."); Drumm v. Morningstar, Inc., 695 F. Supp. 2d 1014, 1018 (N.D. Cal.

---

[1] Plaintiffs' originally sought $35,889.17 in litigation costs.  Defendant did not object to that amount and the Clerk of Court has already taxed defendant $15,806.13.

[2] Defendant requests the court take judicial notice of these 16 exhibits.  That request is granted.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); U.S. Ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

2010) (under California law, awarding attorney's fees is "mandatory" in unpaid wage claims).

The lodestar method is primarily used in cases, such as this one, involving a statutory fee-shifting provision or where the relief sought is injunctive in nature and thus not easily monetized. See, e.g., Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 821 (3d. Cir. 1995). "To calculate the 'lodestar' amount, the court multiplies the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate, raising or lowering the lodestar according to the factors identified by this circuit." Campbell v. Facebook Inc., No. 13-CV-05996-PJH, 2017 WL 3581179, at *3 (N.D. Cal. Aug. 18, 2017) (citing Gerwen v. Guarantee Mutual Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000)).

A party seeking attorney's fees bears the burden of "submitting evidence of the hours worked and the rate paid," as well as proving those rates are "in line with the prevailing market rate of the relevant community." Carson v. Billings Police Dep't, 470 F.3d 889, 891 (9th Cir. 2006). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001); see also Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006) (enumerating factors district courts may consider in determining fee awards).

"The district court has broad discretion to determine whether an inflated fee request warrants reduction and, if so, to what extent." Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 226 (9th Cir. 2013); Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). And "[i]t has long been the law in California that an unreasonably inflated fee

3

request is a special circumstance authorizing the trial court to substantially reduce or deny fees altogether." Muniz, 738 F.3d at 226 (citing Serrano v. Unruh, 32 Cal. 3d 621, 635 (1982)). "The district court should exclude hours that were not 'reasonably expended.' " McGrath v. Cty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). The Ninth Circuit "do[es] not require an elaborately reasoned, calculated, or worded order . . . [While] a brief explanation of how the court arrived at its figures will do, something more than a bald, unsupported amount is necessary." Gates, 987 F.2d at 1398 (internal quotation marks and citations omitted). "[I]n cases where a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." Id. at 1399. Instead, it can make "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." Id. (internal quotation marks omitted).

**B.   Analysis**

   **1.   Whether Plaintiffs' Counsels' Rates Are Reasonable.**

Plaintiffs' counsel have submitted the following rates:

- Tidrick, a partner with 18 years of experience, $825/hour.
- Young, a partner with 12 years of experience, $740/hour.
- Forde, an associate with 4 years of experience, $325/hour.[3]
- Burton, a partner with nearly 30 years of experience, $950/hour.
- Paralegals, $180/hour to $195/hour.

In support of these requested rates, plaintiffs point to a number of cases that have found The Tidrick Law Firm's rates to be in line with the prevailing market rate, the Pearl declaration, and the Laffey Matrix.[4]

---

[3] After plaintiffs' counsel's own reduction, the total requested lodestar for Forde is $5,165.88. The court makes no further reduction to that amount.

[4] Defendant objects to the court's reliance on the Pearl declaration on the basis that it was executed before this court issued its findings of facts and conclusions of law. Therefore, Pearl could not have taken into account the results plaintiffs' counsel achieved. While that is true, defendant has presented no evidence contradicting the rest of plaintiffs' showing, including the hourly rate survey in the Pearl declaration.

4

While the evidence on record supports plaintiffs' contention that the rates are in line with the prevailing rates, the court is not persuaded that plaintiffs' counsel have demonstrated by their performance that these billing rates are warranted. Such exorbitant rates might be justified for top tier law firms litigating legally and factually complex actions. But that is not the case here. In a standard wage and hour class action like this one, the court has little doubt that the claimed rates are significantly inflated. Nevertheless, as defendant submits no argument or evidence to the contrary, the court accepts plaintiffs' rates as in line with the prevailing market rate of the relevant community.

However, high hourly rates come with the expectation of efficiency and the responsible use of billing judgment. As discussed below, those were not apparent here.

### 2. Whether The Hours Plaintiffs' Counsel Expended Were Reasonable

#### a. Block-Billing

Defendant first contends that plaintiffs' counsel improperly block-billed and for that reason it is impossible for the defendant or the court to determine the reasonableness of time spent on each task. Plaintiffs respond that only 26% of Young and Tidrick's combined time entries contain more than one task and, in any event, tasks in the same time entry were usually related.

Both parties stretch the truth. Though Young did not generally block-bill, Tidrick did block-bill a majority of the time. See Dkt. 247-2, Young Reply Decl. ¶¶ 2-3 (Young block-billed 248/1,638 entries; Tidrick block-billed 258/331 entries). And the vast majority of the paralegal time was also block-billed. See Dkt. 240-1, Tidrick Decl., Ex. 4 at ECF p.97-111.

More important than the pure number of entries, plaintiffs' counsel's block-billing practice prevents the court from determining whether the time spent on a task was reasonable. For example, Young's billing records includes six entries totaling 15.9 hours with the exact same entry: "Draft, edit, review Reply to Motion to Certify Class; perform legal research re the same." Ex. 4 at ECF p. 66. For the same task, Tidrick had 11

identical entries totaling 32.8 hours with the exact same entry: "Draft reply re class cert motion; research re same." Id. at 41-42. Not to mention a twelfth and thirteenth on the same topic stating "Draft reply re class cert motion; research re same; conf. with JBY re discovery" (2.2 hours) and "research re class cert reply; email court reporter re rush transcripts" (1.1). Id. at 41. This practice is not an isolated incident. Plaintiffs' counsel billed in the same manner for almost every motion filed in this case. These types of entries prevent the court from parsing the amount of time spent, for example, researching for versus drafting the 15 page reply. Accordingly, the court cannot tell whether the 50 hours spent on the reply was reasonable.

It is because of this uncertainty that the Ninth Circuit condones reducing hours when a court is faced with block-billed time entries. See Welch v. Metro. Life Ins. Company, 480 F.3d 942, 948 (9th Cir. 2007); Frevach Land Co. v. Multnomah Cnty., Case No. CV–99–1295–HU, 2001 WL 34039133, at *9 (D. Or. Dec. 18, 2001). The court thus reduces Tidrick's and the paralegals' hours by 10% to account for the block-billing practice. Because Young block-billed significantly less frequently, the court reduces his hours by only 5%.[5] These reductions are in line with the California State Bar's Committee on Mandatory Fee Arbitration report that found that block-billing "may increase time by 10% to 30%." Welch, 480 F.3d at 948; see also Banas v. Vocano Corp., 12-cv-01535, Dkt. 126 at 9 n.11, December 12, 2014 (N.D. Cal.) (collecting cases).

### b. Vague and Duplicative Time Entries

Relatedly, many of counsel's time entries are vague and duplicative. This also makes it hard, if not impossible, for the court to determine the reasonableness of the claimed hours. Counsel should at least "identify the general subject matter of his time expenditures. Where the documentation is inadequate, the district court is free to reduce an applicant's fee award accordingly." Trustees of Directors Guild of America-Producer

---

[5] Here and throughout this order, the court's percentage reductions are applied after plaintiffs' counsel's reductions.

6

Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000) (internal citation and quotation marks omitted). Many of plaintiffs' counsel's time entries do not meet this low standard. For example, of Tidrick's twenty-eight billing entries between December 4, 2014 and June 12, 2015, twenty-six of them contain "conf. with JBY" "re strategy" or "re update." See Ex. 4 at ECF p. 39-40. Often this entry was only accompanied by "review file." Id. The same is true for many of Young's entries. See, e.g., Id. at 53 (repeating "conference with SGT re case strategy" or "conference with client re case developments").

The court reduces Young and Tidrick's claimed hours by a further 10% to account for these types of entries. United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle, No. 2:09-CV-05672-SVW, 2012 WL 5272281, at *11 (C.D. Cal. Oct. 18, 2012) (collecting cases); see also Michigan v. EPA, 254 F.3d 1087, 1095 (D.C. Cir. 2001) (reducing the lodestar figure by 10% where "numerous entries" were "devoid of any descriptive rationale for their occurrence").

### c. Hours Spent on Litigation Tasks

Pointing to the various complaints and motions the Tidrick Law Firm has filed in past actions, defendant argues that plaintiffs' counsel spent an unreasonable number of hours on certain litigation tasks. For the most part the court agrees.

#### i. Drafting and Amending the Complaints

The court calculates that plaintiffs' counsel spent a total of 57.8 hours (Young: 24.7 hours and Tidrick: 33.08) drafting and amending the three complaints.[6] Defendant argues that that number of hours is unreasonable because much of the SAC was regurgitated from complaints the Tidrick Law Firm filed in other actions.

The court agrees not only with respect to the SAC, but also with respect to the First Amended Complaint and the original complaint. The court finds that the contents of

---

[6] All of the court's calculations only include time entries that clearly indicate the time was spent on the relevant litigation task. Thus, the court's calculation likely <u>underestimates</u> the total amount of time plaintiffs' counsel spent on each litigation task.

7

1 the complaints filed in this action largely match that of the complaints filed by The Tidrick
2 Law Firm in prior cases. Compare 244-1, Exs. A-G with Dkts. 1, 23. While attorneys
3 should be encouraged to reuse applicable work product to increase efficiency and reduce
4 costs, that did not occur here.

The court reduces Young and Tidrick's claimed hours for this task by 33%—the equivalent of one complaint.

### ii. Private Attorney General Act Demand Letter

Before filing a PAGA lawsuit, a putative plaintiff must provide written notice to the Labor and Workforce development agency and the putative defendant. Cal. Lab. Code § 2699.3(a)(1). Defendant contends that the 18 hours plaintiffs' counsel spent drafting the page-long letter is unreasonable, especially considering the letter was addressed to the wrong entity.

The evidence does not support defendant's contention. First, defendant has not submitted the purportedly misaddressed PAGA letter. Second, the time note entries show that The Tidrick Law Firm spent 5.2 hours (Tidrick: 2.6; Paralegal: 2.5) drafting the PAGA letter and those time entries were block-billed with drafting the complaint. Plaintiffs' counsel's block-billing practice was accounted for above and, without more, the court does not find this amount of time spent unreasonable.

### iii. Motions to Dismiss

Defendant next argues that plaintiffs' counsel spent too many hours responding to defendant's two motions to dismiss. In total, plaintiffs' counsel spent 76.7 hours (Young: 32.7; Tidrick: 44) responding to defendant's first motion to dismiss and 95 hours (Young: 30.8; Tidrick: 64.2) responding to defendant's second motion to dismiss.

The courts finds 171.7 hours responding to two motions to dismiss to be well outside the realm of reasonableness. That would be true even if the motions to dismiss presented complex issues of law or fact. That was not the case here, as evidenced by the length of plaintiffs' oppositions, which were five and sixteen pages, respectively. Further, this is not plaintiffs' counsel's first rodeo. Given plaintiffs' counsel's extensive

experience litigating wage and hour class actions and high hourly rates, the court expects efficiency, not the opposite.

The court reduces Young and Tidrick's claimed hours for this task by 50%.

### iv. Motion for Hoffman-La Roche Notice

A Hoffmann–La Roche motion is a relatively standard motion that seeks an order from the court conditionally certifying and ordering notice in a collective action. Defendant contends that the 80+ hours plaintiffs' counsel spent drafting the motion and reply is unreasonable in light of exhibits H through M, which are Hoffman motions the Tidrick Law Firm has filed in other cases. Plaintiffs respond that that time would not have been necessary if defendant had voluntarily provided the necessary contact information.

That the defendant refused to do what plaintiffs' counsel desired does not excuse inefficiency. Plaintiffs' counsel spent a total of 84.2 hours (Young: 50; Tidrick: 34.2) on the Hoffmann briefing. Spending that amount of time on a standard motion is unreasonable. First, the opening motion and reply were 13 pages and 10 pages, respectively, and it should not have been time-consuming to prepare the supporting documents. Second, and more importantly, plaintiffs' counsel somehow managed to spend 51.5 hours drafting the opening Hoffmann motion, which largely copies prior Tidrick Law Firm Hoffman motions. Compare Exs. H-M with Dkt. 46.

The court reduces Young and Tidrick's claimed hours for this task by 50%.

### v. Class Certification

This action had two rounds of class certification briefing. Plaintiffs filed an initial motion seeking to certify classes under Rules 23(a) and 23(b)(3). Dkt. 74. While defendant's brief made the usual arguments in opposition, it also challenged plaintiffs' counsel's adequacy based on an allegation that plaintiffs' counsel offered to pay a putative class member. Dkt. 79. The court held two evidentiary hearings on that issue. See Dkt. 83, 92, 95. After that issue was resolved, plaintiffs filed a subsequent motion to certify an injunctive relief class. Dkt. 107. Defendant argues that plaintiffs' counsel spent an unreasonable number of hours litigating these issues. The court partially agrees.

9

The court cannot conclude that plaintiffs' counsel expended an unreasonable amount of time preparing for the evidentiary hearings. As noted, the evidentiary hearings stemmed from an allegation that plaintiffs' counsel offered to pay a putative class member. Any diligent counsel would spend many hours defending against that serious allegation. The court, therefore, does not apply any reduction to the number of hours plaintiffs' counsel spent preparing for and attending the evidentiary hearings.

However, the 198.7 hours (Tidrick: 106.8; Young: 91.9) plaintiffs' counsel spent on the two rounds of class certification briefing is excessive.[7] Spending 198.7 hours on relatively standard class certification briefing is beyond the pale for lawyers of plaintiffs' counsel's experience charging the hourly rates requested here. Plaintiffs' counsel spent 90.9 hours (Young 46.3; Tidrick: 44.6) drafting the initial motion for class certification. That number of hours would be facially excessive if the motion was drafted from scratch. It is especially excessive here in light of Exhibits N through P that show plaintiffs' counsel did very little original work drafting that motion. Other than the 1.5 page fact section, much of that motion, including a vast majority of the argument section, is copied from past class certification motions filed by The Tidrick Law Firm.

The court reduces Young and Tidrick's claimed hours for this task by 50%.

### vi. Motions for Summary Judgment

Defendant next argues that plaintiffs' counsel spent an unreasonable number of hours litigating the two summary judgments motions filed in this action. Though the court finds the number of hours plaintiffs' counsel spent on these motions to be a little high, defendant has not submitted any specific evidence supporting a reduction. Further, plaintiffs prevailed on their own summary judgment motion and defeated defendant's motion. The former resulted in Open Top being required to pay overtime as a matter of

---

[7] The court recognizes that plaintiffs' reply filed in support of the first motion for class certification includes a response to defendant's challenge to plaintiffs' counsel's adequacy. As plaintiffs' counsel billing entries do not delineate between sections of the reply, the court cannot non-arbitrarily separate the time plaintiffs' counsel spent on that section of the reply.

10

law and both victories were critical to plaintiffs' overall success.

### vii. Discovery and Depositions

Defendant contends that the 451 hours plaintiffs' counsel spent on discovery is unreasonable because written discovery totaled about 11,500 pages and, while numerous, the depositions were all short. Plaintiffs do not dispute defendant's calculation and instead respond that defendant's scorched earth discovery strategy forced plaintiffs' counsel to spend a large amount of time on discovery and the hours spent on depositions were reasonable.

The court agrees that 451 hours spent on discovery is on the high side. This is especially true considering much of the written discovery likely consisted of payroll records—documents that plaintiffs' expert, and not plaintiffs' counsel, would have analyzed. Regarding the depositions, though Young billed 2 to 3 times the length of each deposition, there were often multiple depositions on each day and Young attested that he spent 1.5 hours preparing clients for their deposition. Young Reply Decl. ¶ 15.

As defendant has provided no tangible evidence showing the time plaintiffs' counsel expended on discovery was unreasonable, the court reduces the claimed hours spent on discovery by only 5% to account for general discovery inefficiencies.

### viii. Trial Preparation and Trial

Lastly, the number of hours plaintiffs' counsel spent preparing for trial is far outside the realm of reasonableness. The Tidrick Law Firm spent 541.76 hours (Young: 178.5; Tidrick: 363.26) preparing for and trying this case. Jocelyn Burton, who joined plaintiffs' counsel's team primarily for trial, spent 80.42 hours performing trial-related tasks.[8] In total, plaintiffs' counsel expended 622.18 hours on trial-related tasks. That amount of time is highly excessive for numerous reasons.

First, it is unreasonable from a purely hours-of-preparation to hours-of-trial metric. Plaintiffs used about three hours to complete their case-in-chief for the jury trial and used

---

[8] Other than trial, Burton spent 4 hours attending a settlement conference.

a similar amount of time for the bench trial the following week. Thus, counsel spent nearly one hundred hours preparing for every hour of presentation. And more than 25 hours preparing for every hour of trial—regardless of which party was presenting.

Second, not only is that ratio facially unreasonable, the ratio is especially unreasonable given counsel's performance at trial. Unlike some of the other litigation tasks discussed above, the court has first-hand knowledge regarding how counsel's preparation translated into performance. And the answer is not well. See generally Dkt. 238, Findings of Fact and Conclusions of Law. This also supports a substantial reduction.

Third, plaintiffs' counsel reduced their trial preparation hours by 20% to account for defendant prevailing on plaintiffs' rest break claim. That reduction is insufficient. The record shows that far more than 20% of plaintiffs' case-in-chief at trial focused on their rest break claim. The same was true for the trial as a whole. This also supports reducing plaintiffs' counsel's claimed trial-related hours.

While spending a lot of time preparing for trial is not in and of itself unreasonable, given the complexity of the case, plaintiffs' counsel's experience, the rates charged, and counsel's performance at trial, the court applies a reduction of 63.5%[9] to the hours Young and Tidrick spent preparing for and trying the case. This reduction also accounts for the particularly vague nature of counsel's billing entries. See Ex. 4 at ECF p. 49-52 (repeating "trial prep" or "trial prep; conf with JBY re same"), p. 92-94 (repeating "Trial Preparation" and "Strategy Conference with SGT re Trial").

However, the court finds that such a substantial reduction is not warranted for Burton. On the one hand, the above considerations apply equally to Burton, but Burton in fact only reduced her hours by 10% instead of the 20% reduction taken by her co-counsel to account for not prevailing on the rest break claim. On the other, Burton was brought

---

[9] Including plaintiffs' counsel's own reductions, The Tidrick Law Firm's trial preparation and trial hours were reduced by a total of about 70%.

on primarily for trial and, therefore, likely spent a significant number of hours becoming familiar with the litigation. Accordingly, the court reduces Burton's trial-related hours by only 10% given that her time expenditure was relatively modest in comparison to her co-counsel.

## CONCLUSION

In accordance with the foregoing, the court awards plaintiffs' counsel $1,300,135.20 in attorneys' fees and $20,083.04 in litigation costs and expenses.

**IT IS SO ORDERED.**

Dated: May 4, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge